*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J V LOCRICCHIO, Minor.

UNPUBLISHED
November 3, 2022

No.   359738
Macomb Circuit Court
Family Division
LC No.   2019-000270-NA

Before:  RICK, P.J., and O'BRIEN and PATEL, JJ.

PER CURIAM.

Petitioner, the Department of Health and Human Services (DHHS), appeals by leave granted[1] the trial court's order ruling that termination of respondent-father's parental rights was not in the best interests of the minor child.[2]  Upon review of the record, we conclude that the trial court clearly erred by ruling that termination of respondent's parental rights was not in the best interests of the minor child.  We reverse the trial court's order and remand to the trial court to enter an order terminating respondent's parental rights to the minor child and for further proceedings.

## I.  BACKGROUND

On September 24, 2019, DHHS filed a petition to remove the minor child from custody of the mother and to terminate the mother's parental rights.  At that time, the minor child was nine years old.   The petition included information that respondent had been incarcerated from November 2018 to July 2019 for domestic violence against the mother and that he was unable to care and provide for the minor child.  Respondent had been in and out of jail, his visitation rights had been suspended, and he admitted to relapsing on methamphetamine with the mother.  The trial court authorized the petition and ordered the minor child be placed into protective custody.  The

---

[1] *In re J V Locricchio Minor*, unpublished order of the Court of Appeals, entered February 10, 2022 (Docket No. 359738).

[2] The mother of the minor child voluntarily terminated her parental rights and is not a party to this appeal.  "Respondent" refers only to respondent-father in this opinion.

-1-

minor child was placed in the home of fictive kin (foster father), who immediately took all the steps to become a foster care provider.

The record indicates that respondent had a history of substance abuse, which started when he was a child. In addition, respondent had a long history of incarcerations for domestic violence and drug abuse crimes beginning when he dropped out of high school. Respondent met the mother while they were doing heroin together, which essentially became their lifestyle. Following the minor child's birth, respondent served additional jail terms for drug possession and use. The record indicates there were intermittent periods when respondent was sober, but then relapsed into drug abuse. His employment history was chaotic and intermittent as a result of his substance abuse disorder.

Respondent was offered services for reunification as early as October 15, 2019. Respondent pleaded no contest to the jurisdictional allegations in the petition on November 29, 2019. A parent/agency treatment plan (PATP) was prepared and signed by respondent. It required parenting classes, a substance-abuse assessment, drug screens, a psychological evaluation, anger management and domestic violence assessments and follow-through on referrals and recommendations, maintaining contact with DHHS, no contact with any "individuals detrimental to reunification," a legal income, and appropriate and safe housing. A clinician recommended that respondent participate in domestic violence counseling, Alcoholics Anonymous (AA)/Narcotics Anonymous groups to remain substance-free, and anger management. Respondent completed a psychological evaluation, and it was recommended that he complete drug testing and substance-abuse treatment.

At a February 2020 hearing, it was reported that respondent was participating in the PATP requirements, including assessments, drug screens, and treatments. Respondent attended two supervised visitations that went well. He then requested and was permitted to set up a supervised visit. However, he canceled that visit, and there is no evidence in the record that respondent visited the minor child again. At the hearing in May 2020, and in subsequent hearings, it was reported that respondent had ended compliance with the PATP, including contact with the minor child. His whereabouts were unknown and he failed to maintain contact or attend any trial court hearings.

During the approximately two years of this case, respondent disappeared numerous times. While out of jail, respondent could not be located from mid-March to July 2020, from August 2020 until October 2020, and then again from October or November 2020 until April 2021, when DHHS found that respondent was in jail. Before respondent became incarcerated, he continued to reside in the home that he knew was unsuitable for reunification.

Instead of participating in services and working toward reunification by maintaining contact with DHHS, finding employment and suitable housing, and setting up visitation with the minor child, respondent violated his parole requirements and added new crimes to his record. He was charged with traffic and weapons offenses and aggravated indecent exposure. He absconded from probation in August 2020, and had three active warrants. In September 2020, respondent was charged with domestic violence and knowingly assaulting a pregnant person for an incident with his girlfriend, and substance-abuse crimes, including possession of methamphetamine, manufacturing methamphetamine, and maintaining a drug house. He pleaded guilty and was

convicted of aggravated indecent exposure, manufacturing methamphetamine, possession of methamphetamine, and maintaining a drug house.

In September 2020, DHHS filed a supplemental petition seeking termination of respondent's parental rights to the minor child for failure to participate in services. The trial court authorized the petition and ordered continued services and efforts to work with respondent. Respondent's whereabouts continued to be unknown until the hearing in April 2021, when it was reported that he had been located at the Macomb County Jail. The hearing on the petition to terminate respondent's parental rights was held in October 2021, before a family court referee. The minor child was then eleven years old, and had been living with her foster family since September 2019. Respondent was 42 years old, and he had been incarcerated in jail for seven months awaiting sentencing for the above charges.

At the hearing, the DHHS worker testified that respondent had failed to comply with his PATP or participate and complete services. Despite initially engaging in services, respondent failed to continue or complete them.

Testimony at the hearing revealed that, from the beginning of the case, the child consistently told the DHHS worker that she was happy with her placement and wanted to live with the foster family. She was doing well in school and had made friends. She did not want to go back with either parent. She had never lived with respondent or had much of a relationship with respondent. Further, she expressed concern about being placed with respondent.

During his time in jail, respondent had become drug-free and had been speaking the minor child over the phone twice a month. The worker and the foster father both testified that the minor child enjoyed talking to respondent. However, she did not initiate the calls and at times did not want to talk with him, but did not refuse to talk with him when he called. The foster father stated that, whatever the outcome of the hearing, he would always be willing to let respondent communicate with the minor child. The foster father stated that there had never been an "ongoing relationship" between respondent and the minor child, but the minor child knew respondent was her father. The worker and foster father both believed that there was no bond between respondent and the minor child and argued that termination of respondent's parental rights would be in the minor child's best interests.

At the hearing, respondent blamed his noncompliance with his PATP on the fact that he had been in jail for much of the time, he did not have a car to get to the services, and then the COVID-19 pandemic closed services. However, the record indicates that the only service that shut down completely during the COVID-19 pandemic was the drug-testing facility, which was closed from March 2020 until June 2020. All the other services continued through Zoom or other virtual means. Additionally, respondent also asserted that he ultimately failed to comply with his PATP because he began using drugs again.

Respondent testified that he had been clean for seven months and believed that he could continue to stay clean. He had been reading self-help books and attending AA meetings every night. He had pleaded guilty to the above charges, but had not yet been sentenced. His recommended minimum sentence guidelines range was 5 to 46 months imprisonment, but he believed that he would receive a year or less. Respondent believed he would be released on a

tether, get back on probation, and begin working on his PATP right away. He hoped to live in a "three-quarter house" for six months to a year after he was released. However, the minor would not be able to reside with him during that time. Respondent testified that he intended to return to work and make sure that he could maintain a sober life. Additionally, he pledged to maintain continuous contact with the minor child, participate in family counseling, and continuous substance-abuse counseling. Respondent agreed that, under his timeline, he would not be ready to parent the minor child for, at a minimum, another year and a half. Respondent acknowledged that he had struggled with sobriety for most of his life. Respondent admitted that during the pendency of the case, he spent a significant amount of time on drugs and had committed felonies. But, he asserted that he wanted "to do whatever it takes to stay sober and be a good parent."

Following closing arguments by the parties, the referee found clear and convincing evidence to support termination under MCL 712A.19b(3)(c)(*i*) (the conditions that led to the adjudication continue to exist and no reasonable likelihood that they would be rectified within a reasonable time considering the child's age), (c)(*ii*) (other conditions exist, the parent received recommendations to rectify those conditions, the conditions were not rectified and there is no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's ages), and (g) (failure to provide proper care and custody). Regarding the best interests of the minor child, the referee found that the preponderance of the evidence established that there was a relationship between respondent and the minor child and that they "both benefit from that." The referee found the evidence showed that the minor child looked forward to the conversations with respondent and that respondent "definitely" looked forward to maintaining a relationship with the minor child. The referee further found that there was "no testimony whatsoever" that maintaining the relationship between respondent and the minor child would "at all be detrimental to her," and that the testimony showed that maintaining the relationship with respondent would be a benefit to her. Therefore, the referee denied the petition to terminate respondent's parental rights on the basis that termination was not in the best interests of the minor child.

DHHS requested a review of the referee's recommendation and argued that the referee clearly erred. The trial court affirmed the referee's recommendation. This Court granted petitioner's delayed application for leave to appeal.

## II. BEST INTERESTS

On appeal, DHHS argues that the trial court clearly erred by concluding that termination of respondent's parental rights was not in the best interests of the minor child. We agree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error the trial court's determination regarding the children's best interests. *In re Pederson*, 331 Mich App 445, 476; 951 NW2d 704 (2020); *In re Schadler*, 315 Mich App 406, 408; 890 NW2d

676 (2016). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

In making its best-interests determination, the trial court should weigh all the evidence available within the whole record. *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "[T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*.; see *Pederson*, 331 Mich App at 476. Another consideration is the likelihood that "the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). In *In re Moss*, 301 Mich App at 88-89, this Court explained:

> [O]nce a statutory ground for termination is established, i.e., the parent has been found unfit, the focus shifts to the child and the issue is whether parental rights *should* be terminated, not whether they can be terminated. Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has.

In other words, the primary focus during the best interests determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

In her opinion, the referee stated that she "took judicial notice of the file from all prior proceedings, as well as the testimony that was credibly received this date." However, our review of the record shows that the referee did not weigh the evidence available on the whole record in determining the minor child's best interests and did not consider that the minor child's interest in a normal family home was superior to any interest respondent had. The referee appeared to consider only the bond between the child and respondent and based her decision solely on the fact that the minor child was willing to talk to respondent by phone a couple times a month. The referee explained:

> [T]here has been no testimony whatsoever that maintaining a relationship with [the minor child] and [respondent] would at all be detrimental to [the minor child], and the only testimony the Court has received is that maintaining that relationship would be of a benefit to [the minor child], so the Court cannot find it would be in the child's best interest to terminate the parental rights.

Moreover, both the referee and trial court did not consider the other best-interests factors. See *In re White*, 303 Mich App at 713. The referee made no mention of other factors or references to other testimony or documents in the record. The referee did not consider respondent's parenting ability. The fact that he had two uneventful visits with the minor child at the beginning of this case does not outweigh the fact that he did not show up for a planned third visit or make other

attempts to see the child. Respondent did not complete parenting classes, he disappeared from the child's life for months at a time, and he had never provided a home or any parenting to her in the past. Despite the referee acknowledging that prior to respondent's incarceration, his housing was "not approved" and that wherever he "would be going home [was] questionable at best," the referee did not consider the advantages of the foster home over whatever unknown home respondent might possibly provide for the minor child in the future. The referee did not consider that the minor child, who was 11 years old at the time of the hearing, had already been in a foster home for more than two years. She loved it there, and the family wanted to adopt her. The referee did not consider the minor child's need for permanency or stability. The referee wholly failed to consider whether it was in the child's best interests to wait for a minimum of one and a half years to see if respondent would take the necessary steps to turn his life around so that he could provide a home for her. The proceedings below failed to hear the child—when she clearly indicated that she did not want to live with respondent. The referee did not consider how respondent would address and provide for the needs of a 13- or 14-year-old child, assuming he was no longer incarcerated when the child reached these ages. The referee did not consider that respondent had not been consistently involved in the minor child's life. The referee did not consider respondent's history of domestic violence or his visitation history. Although respondent had multiple convictions of domestic violence, he claimed that there was no physical violence involved and he did not admit responsibility. Further, the referee did not consider that respondent failed to address his anger and substance-abuse issues.

There is also no indication that the referee considered respondent's most recent criminal history, which included a weapons charge and a conviction of aggravated indecent exposure that had occurred since the case was initiated. In addition to his life of substance abuse and domestic violence—issues which respondent never addressed—a conviction of aggravated indecent exposure would certainly be relevant when determining the best interests of the minor child. Additionally, the referee did not consider the minor child's history of abuse. The record revealed that, from birth and for approximately nine years, the minor child was afraid of and exposed to her mother's drug use and had been consistently mistreated by her mother. Throughout the minor's life with the mother, respondent was absent due to his drug addiction and frequent incarcerations. Moreover, for the more than two years that the minor lived with her foster family, the minor child had been in a loving home in which she felt safe, secure, and comfortable. There was no evidence that the child could be placed with respondent within the foreseeable future, if at all. *In re Frey*, 297 Mich App at 249.

Considering the entire record, we disagree that there was "no testimony whatsoever" that maintaining a relationship with respondent would be detrimental to the minor child. Additionally, we are left with a definite and firm conviction that a mistake has been made. We conclude that the evidence preponderated in favor of termination of respondent's parental rights. Therefore, the referee and trial court clearly erred by concluding otherwise. We reverse the trial court's order and remand this case to the trial court for entry of an order terminating respondent's parental rights to the minor child.

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Sima G. Patel